**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DARREN DITONA,

Plaintiff,

v. Case No. 8:26-cv-1916-WFJ-SPF

ROGER NUTT,

Defendant.
_______________________________________/

**ORDER**

This matter is before the Court on *pro se* Plaintiff Darren Ditona's amended civil-rights complaint under 42 U.S.C. § 1983. (Doc. 8). Mr. Ditona alleges that his rights were violated when a prison official confiscated a sigil he was using for a "moon ritual." (*Id.* at 5). Upon initial screening, *see* 28 U.S.C. § 1915A, the Court concludes that Mr. Ditona states a plausible claim under the First Amendment's Free Exercise Clause. Mr. Ditona fails, however, to state an actionable claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Mr. Ditona is a Florida prisoner confined at Polk Correctional Institution. (Doc. 8 at 2). He practices a "monotheistic form of Folk Magic that . . . may be labeled Wicca." (Doc. 8-1 at 1). As part of his Wiccan beliefs, Mr. Ditona performs a "bi-monthly" "moon ritual" in which he uses a "sigil"—a consecrated sheet of paper—as a "focal point" to "store energy." (*Id.*) On December 12, 2025, Mr. Ditona was twelve days into a fourteen-day moon ritual. (Doc. 8-2 at 10). That morning, Colonel Roger Nutt allegedly confiscated Mr.

Ditona's sigil during a "routine" cell inspection. (*Id.*) Mr. Ditona informed Mr. Nutt that the sigil "was a religious item." (*Id.*) Mr. Nutt responded, "I don't give a F*CK." (*Id.*) After inspecting the sigil, Mr. Nutt said, "This looks like some gang sh*t." (*Id.* at 11). He then left the cell with the sigil, which was "never returned" to Mr. Ditona. (*Id.*) The confiscation of the sigil "desecrated" it and prematurely terminated the moon ritual. (*Id.* at 10-11). Based on these allegations, Mr. Ditona sues Mr. Nutt in his individual capacity for violating the Free Exercise Clause and RLUIPA. (Doc. 8 at 2-3). As relief, Mr. Ditona seeks $98,000 in damages and asks that "administrative punitive actions [be] taken against" Mr. Nutt. (*Id.* at 5).

First, Mr. Ditona states a plausible free exercise claim against Mr. Nutt. "To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his sincerely held religious beliefs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007). "Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Mr. Ditona alleges that his Wiccan beliefs require him to perform a "bi-monthly" "moon ritual" with a "sigil"—a consecrated sheet of paper. (Doc. 8-1 at 1). On December 12, 2025, Mr. Nutt allegedly confiscated Mr. Ditona's sigil despite being told of its religious significance, thus prematurely ending a time-sensitive, fourteen-day moon ritual. (Doc. 8-2 at 10-11). Taken as true, these allegations are sufficient to plead that Mr. Nutt

"impermissibly burdened one of [Mr. Ditona's] 'sincerely held religious beliefs.'" *Watts*, 495 F.3d at 1294. The question becomes whether the confiscation of the sigil was "reasonably related to legitimate penological interests." *Johnson*, 581 F. App'x at 780. This case is still at the "preliminary-screening stage," and Mr. Nutt has not had an opportunity to "respond[] to [Mr. Ditona's] allegations." *Id.* at 781. As a result, it is unclear "what justifications [he] may provide for these alleged actions." *Id.* Thus, "the facts surrounding [Mr. Nutt's] justification for [his] alleged interference with [Mr. Ditona's] religious practices must [] be developed before a determination can be made as to whether [Mr. Nutt] acted reasonably." *Id.* At this early stage of the proceedings, the free exercise claim may proceed against Mr. Nutt in his individual capacity.

Mr. Ditona fails, however, to state an actionable RLUIPA claim against Mr. Nutt. Under RLUIPA, "[o]nce a plaintiff proves that a challenged practice substantially burdens his religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013). But unlike the Free Exercise Clause, RLUIPA does not permit claims for monetary damages against prison officials sued in their individual capacities. *See Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1942 (2026); *Robbins v. Robertson*, 782 F. App'x 794, 801 n.4 (11th Cir. 2019) ("[T]he district court correctly concluded that RLUIPA does not create a cause of action against state officials in their individual capacities . . . ." (citation omitted)). Here, Mr. Ditona sues Mr. Nutt solely in his individual capacity and seeks $98,000 in damages. (Doc.

8 at 2, 5). Mr. Ditona "may not bring a claim for monetary damages against [Mr. Nutt] in [his] individual capacit[y]." *Hathcock v. Cohen*, 287 F. App'x 793, 798 (11th Cir. 2008).

To be sure, Mr. Ditona also requests that "administrative punitive actions [be] taken against" Mr. Nutt. (Doc. 8 at 5). But "[f]ederal courts do not have the power to order officials to take certain disciplinary actions against their employees." *McKinnon v. Sec'y, Dep't of Corr.*, No. 3:24-cv-478-MMH-LLL, 2024 WL 5125464, at *4 (M.D. Fla. Dec. 16, 2024) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993)); *see also Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977) ("We all understand, of course, that federal courts have no authority to address state officials out of office or to fire state employees or to take over the performance of their functions."), *rev'd in part on other grounds by Alabama v. Pugh*, 438 U.S. 781 (1978). In short, the only cognizable form of relief Mr. Ditona seeks is monetary damages, but RLUIPA does not permit an individual-capacity damages claim against a prison official. Because Mr. Ditona cannot proceed under RLUIPA against Mr. Nutt in his individual capacity, the RLUIPA claim must be dismissed without prejudice.

Accordingly, it is **ORDERED** that:

1. The RLUIPA claim is **DISMISSED without prejudice**.
2. The free exercise claim against Mr. Nutt in his individual capacity may **PROCEED**.
3. Within **TWENTY-ONE DAYS** of the date of this order, Mr. Ditona must either (1) file a second amended complaint that includes all the claims that

he wishes the Court to consider, or (2) file a notice informing the Court that he wishes to proceed only on the free exercise claim against Mr. Nutt.

a. If Mr. Ditona chooses to proceed only on the free exercise claim, the Court will direct service of process on Mr. Nutt by separate order.

b. If Mr. Ditona chooses to amend, he must complete a new civil rights complaint form, titling it "Second Amended Complaint." The second amended complaint must include all of Mr. Ditona's claims and may not refer back to, or incorporate, the amended complaint. Any amended pleading will be subject to screening under 28 U.S.C. § 1915A.

4. **Failure to timely comply with this order will result in the dismissal of this action without further notice**.

5. The Clerk is **DIRECTED** to mail to Mr. Ditona a copy of the standard prisoner civil rights complaint form.

**DONE** and **ORDERED** in Tampa, Florida, on August 18, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE